**In re GRAFF MARKETING CORP., Debtors.**

**John S. PEREIRA, As Trustee in Bankruptcy of Graff Marketing Corp., Plaintiff,**

v.

**HOUZE GLASS CO., Defendant.**

**Bankruptcy No. 8112055(HB).**
**Adv. No. 83–6113A.**

United States Bankruptcy Court, S.D. New York.

July 31, 1984.

Robert P. Herzog, New York City, for the trustee.

Kass, Goodkind, Wechsler & Labaton, New York City, for Houze Glass Co.; Karen Van Ingen, New York City, of counsel.

## DECISION AND ORDER

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

John S. Pereira, as Trustee in Bankruptcy of Graff Marketing Corporation ("Graff Marketing") has moved, pursuant to Canons 4 and 9 of the New York State Bar Association Code of Professional Responsibility [1] ("Canon 4 and Canon 9"), for an order disqualifying Robert S. Schachter and the lawfirm of Goodkind, Wechsler & Labatan (the "Goodkind Firm") as counsel for Houze Glass Company ("Houze") in this adversary proceeding.

### I

This litigation was commenced in November, 1983 by the Trustee in Bankruptcy. The complaint alleges that Graff Marketing is owed $165,000 as a result of services rendered to Houze as a manufacturer's representative prior to the filing of the bankruptcy petition herein on November 12, 1981. Counsel to the trustee and the Goodkind Firm stipulated to extensions of the time to answer at the end of which Houze filed its answer denying the material allegations of the complaint. In answering, Houze asserted various affirmative defenses, including that Graff Companies placed

---

**1.** The ABA Code "has been recognized in this Circuit as providing appropriate guidelines for proper professional behavior." *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980) (citations ommitted). The Code of Professional Responsibility, as promulgated by the American Bar Association in August, 1969, was adopted by the New York State Bar Association as its own Code of ethics, effective January 1, 1970, with certain amendments which have been incorporated into the Code as set out therein. The Code consists of canons which are "axiomatic norms, expressing in general terms the standard of professional conduct expected of lawyers." While the Ethical Considerations accompanying each Canon are "aspirational in character", the Disciplinary Rules Keyed to each canon "state the minimum level of conduct below which now lawyer can fall without being subject to disciplinary action." Preliminary Statement. American Bar Association Code of Professional Responsibility, N.Y. Judiciary Law, app. at 365 (McKinney 1975).

their own rather than the Houze "Duns Number" on certain merchandise purchase orders causing payment to be improperly diverted to Graff companies. It also asserted three counterclaims relating to the commissions claimed by Graff Marketing, including a claim that Graff Marketing forged a check payable to Houze.

Discovery commenced on February 27, 1984 when Houze served Graff Marketing with "Defendant's First Request for Production of Documents." In response to Houze's request, Graff Marketing filed the instant motion.

Graff Marketing and Graff Group are private companies, the shares of which are owned entirely by one Mitchell Graff. During the period from April 1980 through October 1981, the Goodkind Firm represented Graff Group and other affiliated companies in nineteen unrelated litigations. It was so engaged apparently because Robert S. Schachter, a partner at the Goodkind Firm, was a friend of one Ron Selling, then the right hand man to Mitchell Graff, the President of Graff Group and Graff Marketing. When Selling resigned from Graff Group and Graff Marketing in October 1981 to become President of Houze the Goodkind Firm's engagement was terminated.

The parties dispute the nature and form of the Goodkind Firm's engagement. Graff asserts that throughout this period of time he considered Schachter to be his "exclusive legal representative" with whom he consulted with regard to business and financial matters and with regard to his business and "without distinction to corporate identies." He adds that, although his companies did not pay Schachter or the Goodkind Firm pursuant to a regular retainer, he considered them his "general counsel" and as a result of this relationship had confided extensively with Schachter on

numerous legal and financial matters. Graff further asserts that through their social and business relationship Schachter became totally familiar with Graff Group's operations, and in particular, Graff Group's relationship with the defendant Houze. From this he concludes that the communications and information exchanged between Schachter and the Graff companies, if disclosed or used would give the defendant, Houze Glass Company an unfair advantage at the trial of this matter.

Schachter denies that he or the Goodkind Firm ever represented the debtor herein, Graff Marketing, and claims that this case and those he previously handled are unrelated. In addition to denying the role of "general counsel" to which Graff would consign him, and the receipt of confidential information relating to the subject matter of this litigation, Schachter observes that this litigation, a claim for purported commissions due Graff Marketing from Houze, could not involve any confidence with respect to only purely mathematical transactions between the parties.

Schachter's relationship with Selling, however lends considerable support to Graff's claim that, upon various formal and informal occasions, the three of them would discuss the general business of Graff Group and Graff Marketing. Particularly is this so given the single ownership of these companies and their relationship. While the business of Graff Group concerned the distribution of household products to retailers and the business of Graff Group consisted of representing manufacturers on a commission basis, they employed the same persons, utilized the same offices, shifted funds between them and utilized the same stationery bearing the name Graff Group. This resulted in customer confusion, and often commissions due Graff Marketing would be paid to Graff Group.[2] So closely tied together

---

**2.** Indeed the interlocking relationship of these two companies is conformed by a January 26, 1981 letter from the controller of Graff Group and Graff Marketing stating that Graff Group was the manufacturer's representative for Houze Glass. Services performed by Houze, however, were on a commission basis. The testimony, supported by the identification of the business transacted by Graff Marketing and Graff Group as stated in their respective bankruptcy petitions, that Graff Marketing, not Graff Group, acted as commission agent would indi-

were they that even Houze, in its answer prepared by the Goodkind Firm, claims that they were affiliated and lumps them together under the term "Graff".

Furthermore, it appears, given that it was Graff Marketing which served as a manufacturer's representative on a commission basis, that some of the nineteen litigations handled by the Goodkind Firm in fact involved services performed on behalf of Graff Marketing. Although brought in the name of Graff Group, presumably because of the stationery bearing only that name may have been sent to clients, seven of these cases involved commissions owed for services performed as a manufacturer's representative. It being undisputed that commissions received by Graff Group would be credited to Graff Marketing, it would appear that in these suits the Goodkind Firm also represented Graff Marketing however it drafted the summonses and complaints seeking commissions. While an argument to the contrary is plausible and these lawsuits and the letter referred to in footnote 1 above can be viewed as evidence that Graff Group also earned commissions, the ultimate crediting of commissions to Graff Marketing remains undisputed.

cate that the author confused the matter. It appears more likely that this matter is but another example that these companies, in dealing with third parties, failed to maintain the distinction and treated themselves as a single entity.

**3.** Canon 4 mandates that "A lawyer should preserve the confidences and secrets of a client." In implementing that canon, DR–4–101 provides:

Preservation of Confidences and Secrets of a Client

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR–4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

More significantly, the evidence on this score taken as a whole, particularly because of its lack of complete consistency on this point, and particularly because of the alter ego and interrelated nature of these companies, compels the conclusion that the persons who served them, including Schachter, treated them as a unified entity.

## II

Motions to disqualify counsel under Canon 4 present a clash of policy interests demarked by the need to preserve the integrity of the attorney-client relationship by protecting confidential exchanges on one hand, and the desirability of latitude in the selection of counsel on the other.[3] They are also subject to abuse and often made for tactical reasons having little or nothing to do with the policies said to be advanced. *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); *Nichols v. Village Voice Inc.,* 99 Misc.2d 822, 417 N.Y.S.2d 415, 419 (Sup.Ct.N.Y.Co.1979), *Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir.1977).

■■■ Accomodating this clash of interests is the test formulated in *T.C. Theatre Corp. v. Warner Bros. Pictures Inc.,* 113

(1) Confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR–4–101(C) through an employee.

(4) The resolution of this case under Canon 4 renders it unnecessary to reach a determination under Canon 9.

F.Supp. 265, 268 (S.D.N.Y.1953): "where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation the latter will be prohibited." To this has been added the element that "the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983). Proof satisfying the substantial relationship test raises a rebuttable presumption of potential misuse since "a 'former client-present adversary' should not unnecessarily be put to the Hobson's choice of revealing confidences in order to obtain disqualification." *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 741 (2d Cir.1978) (Mansfield, J. concurring); *Laskey Bros. of W.Va. Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed.2d 814 (1956); *United States v. Standard Oil Co.*, 136 F.Supp. 345, 364 (S.D.N.Y.1955).

### A. *Identification of the Relationship*

The substantial relationship test necessarily presumes the existence of an actual attorney-client relationship. Canon 4, which the test is designed to further, protects only clients from disclosure or protected communication. For these reasons it has been held that prior representation of a dissident member of the board of directors or a minority shareholder of a corporation is not equivalent to representation of the corporation itself and therefore the substantial relationship test does not apply. *Evans v. Artek Systems Corp.*, 715 F.2d at 792–93; *R–T Leasing Corp. v. Ethyl Corp.*, 484 F.Supp. 950 (S.D.N.Y.1979), *aff'd mem.* 633 F.2d 206 (2d Cir.1980); *see also, Industrial Parts Distributors Inc. v. Fram Corp.*, 504 F.Supp. 1194 (D.Kan. 1981).

■ There can be little question of the requirement of attorney-client relationship in order to invoke the protection of Canon 4; the canon itself so commands. But delimiting the contours of activity that may constitute formation of such a relationship involves far more than identification of the entity that paid the attorney's fee. Rather, the inquiry, in the context of a disqualification motion, should be, consistent with the purposes of Canon 4, whether the relationship was such that the attorney was in fact engaged and as such was in a position to receive confidences from the movant. To draw the issue more narrowly would be to defeat examination of the principal inquiry, namely whether the relationship between the former engagement and the current litigation is substantial. To merely apply the labels that the parties might have employed in other contexts would be to subvert the purposes of Canon 4 and to cloud the trial. *Emle Industries Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir.1973).

> The dynamics of litigation are far too subtle, the attorney's role in that process far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.

■ Application of those concepts here plainly indicates that, for the purposes of this motion, Graff Marketing must be deemed to have been a client of the Goodkind Firm during the period from April 1980 through October 1981. There is no question that Schachter functioned as a lawyer; nor is there any substantial question that he was in a position to receive confidences from Graff Marketing. Neither he nor the Graff companies paid any attention, at the time, to whether Graff and Selling were acting on behalf of one or the other of these companies during their conversations; nor is there any doubt that the affairs of these two companies were so intertwined that their identity made no difference.

And it is that heavy intertwining that makes significant the name of the company employed to sue for commissions in the cases that the Goodkind Firm handled. This is not a case where an unrelated entity

may have been the real party interest in these lawsuits. In such a case, the likelihood that the attorney may have been in a position to receive confidences would apparently be *de minimus*. Indeed, Houze has not asserted that the complaint is brought by a party that is not a real party in interest. To the contrary, it asserts counterclaims against Graff Marketing on the basis of acts taken during the course of the marketing relationship. This is thus a case where the distinction between corporate identities have now become significant largely because the bringing of the motion to disqualify. Such a belated distinction should not control resolution of the sensitive issues presented, or limit the policies sought to be advanced, by the Canons of ethics.

Graff Marketing thus falls within the protective ambit of Canon 4 for the purposes of this motion. We accordingly turn to application of the substantial relationship test itself.

### B. *Substantial Relationship*

It is in the formulation and application of that test that the clash of interests noted above has come dramatically to the floor.

Concern for the ability of the new clients freedom to engage counsel of its choice and for the additional expense it will incur in obtaining and familiarizing new counsel with the case have led to:

> honing the "substantial relationship" test in this Circuit in practical application to granting disqualification only upon showing that the relationship between issues in the prior and present cases is "patently clear." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* [518 F.2d 751, 754–56 (2d Cir.1975)]. "Put more specifically, disqualification has been granted or approved recently only when the issues involved have 'identical' or 'essentially the same.'" *E.g. NCK Organization, Ltd. v. Bregman,* 542 F.2d 128, 135–36 (2d Cir.1976) (concurring opinion); *Hull v. Celanese Corp., Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975); *Emle Industries, Inc. v. Patenex, Inc., supra* 478 F.2d at 572; *Motor Mart, Inc. v. Saab Motors, Inc.* 359 F.Supp. 156, 158 (S.D.N.Y.1973).

*Government of India,* 569 F.2d at 739–40.

Here the three counterclaims asserted by Houze in its amended answer especially seem to implicate Schachter's triangular relationship with Graff and Houze and compels a finding of a substantial relationship. The allegations that Graff improperly substituted its own "Duns Number", thereby fraudulently diverting money due Houze, that Graff Marketing forged at least one check made payable to Houze and that Graff Marketing diverted business from Houze to Houze's competitors, thereby tortiously interfering with advantageous business relationships, all relate to the time of prior engagement. Graff's testimony that he discussed with Schachter the filling of customers orders, the arrangements between Graff and Houze, and Houze's billing or invoicing the ultimate customers of the glassware indicates that the relationship between this litigation and the engagement is substantial. *Horn Waterproofing Corp., v. Excelsior 57th Corp.,* N.Y.L.J., vol. 192, issue 16 at 6, col. 2 (Sup.Ct. N.Y. Co. July 24, 1982) (law firm formerly worked on number of matters for construction company held disqualified from representing former client's adversary in a case involving factual issues similar to those involved in prior cases but not involving current client.) That Selling may have independently provided such information is irrelevant.

> [T]he client's privilege in confidential information disclosed to his attorney "is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources."

*Emle Industries, Inc.,* 478 F.2d at 572–73, quoting from H. Drinker, *Legal Ethics* 135 (1953). *NCK Organization LTD. v. Bregman,* 542 F.2d 128 (2d Cir.1976).

None of this is to say that Schachter or the Goodkind Firm has actually revealed a

confidence and Schachter has denied having done so. The protection of all privileged conversations, however, cannot rest on the good faith of the particular attorney. *Emle Industries, Inc.*, 478 F.2d at 571; nor should the new client or the attorney labor under the constraint of constant appraisal of the source of the attorney's information.

Concededly, one cannot tell, from this record, whether the present and prior engagement concern the same precise legal issue. It does not appear from the cases, however, that identical legal issues are necessary to satisfy the test once it is shown that the same significant factual subject matter is common to both engagements.

Especially is this so in cases where the former engagement was that of general counsel, or sole attorney on numerous matters. *See, Interco Systems, Inc. v. Omni Corporate Services, Inc.*, 733 F.2d 252 (2d Cir.1984); *Evans v. Artek Systems Corp. supra.* In addressing that portion of a motion to disqualify counsel on the basis of having served as general counsel to the movant prior to the transactions at issue, the *Evans* Court, without any discussion of the term, phrased the test in terms of a "significant relationship" 715 F.2d at 792. The *Interco* court observed that the test in these circumstances should focus on direct dealings and the overlap of the engagement with the events that are the subject of the subsequent action:

> Having served for three years as plaintiff's general counsel during which it dealt directly with defendant Wasserman, who was then president of plaintiff, the Kohrman firm should not now participate as counsel opposing plaintiff's claims of unfair competition and misappropriation of trade secrets asserted against Wasserman and based in significant part on events occurring while the Kohrman firm represented plaintiff.

733 F.2d at 255.

Structuring the substantial relationship test in these terms, raises, of course, the question of "unnecessarily constricting the careers of lawyers who started their practice of law at large law firms simply on the basis of their former association" *Government of India*, 569 F.2d at 741 (Mansfield J. concurring) but the propriety of derivative disqualification is an area that should be revisited, *See generally, Note, Unchanging Rules in Changing Times: the Canons of Ethics and Intrafirm Conflict of Interest*, 73 Yale L.J. 1058 (1964) and the Second Circuit, author of the principal opinions in this field, has itself indicated a reluctance to disqualify an attorney who handled a case briefly, and merely on the periphery of the litigation. *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 757 (2d Cir.1975).

■ Moreover, such inquiry strongly supports the prophylactic concerns expressed in *Emle Industries*, 478 F.2d at 571. In accordance with the presumption raised by the substantial relationship test itself, it logically follows that, if significant events giving rise to the instant lawsuit overlap with a prior engagement of general counsel or acting as sole lawyer for the client, a substantial relationship should be inferred subject to proof that the relationship of the now adverse parties was not discussed with such counsel during the engagement. The sanctity of the litigation process, the need to encourage full and frank communication between client and counsel and the needs of the court in having an effective adversary process so essential to the rendering of just decisions, *see, Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979), require no less.

Of course such an inference may be contradicted and often will be in case involving clients who directly engage local counsel to handle local matters or that have in-house counsel handling legal matters separate and apart from general counsel. But in a case such as this where the companies had no such staff and engaged only one lawyer whose involvement was such that it was even he who referred matters to local coun-

sel, disqualification should be in order since the disputed matters relate to the period of the engagement. Particularly is that so where, as here, the former client and the attorney discussed that client's relationship with the attorney's current client.

It matters not that the former client is unwilling, although claiming a lack of ability to remember, to disclose confidences. Such a distinction would discourage the free communication sought to be achieved by Canon 4. *Emle Industries Inc.*, 478 F.2d at 571. It should similarly matter not that there is no evidence here that the attorney participated in structuring the transaction now at issue.

What is significant is that the movant's relationship with its current adversary was discussed as part of the engagement and that the current lawsuit concerns commissions alleged to have been earned pursuant to that relationship during the time of the engagement. As such there is a patent and clear relationship and disqualification is required.[4]

> Doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification. *International Business Machines Corp. v. Levin*, 579 F.2d 271, 283 (3rd Cir.1978); *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *Chugach Electric Association v. United States District Court*, 370 F.2d 441, 444 (9th Cir.1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967).

*Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978).

The foregoing constitutes this Court's findings of facts and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The motion to disqualify the Goodkind Firm should be, and the same hereby is, granted.

IT IS SO ORDERED

**4.** The resolution of this case under Canon 4 renders it unnecessary to reach a determination under Canon 9.