**Constantine John GEKAS, Trustee of Met-L-Wood Corporation, Debtor, Plaintiff,**

v.

**Frederick L. PIPIN, et al., Defendants.**

**No. 86 C 2886.**

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1987.

Adrianne S. Harvitt, Harvitt & Gekas, Ltd., Chicago, Ill., for plaintiff.

John Powers Crowley, Matthew F. Kennelly, Cotsirilos & Crowley, Ltd., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns plaintiffs motion to compel discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure. For the reasons stated herein, this court grants plaintiff's motion and orders deponent Daniel Zazove to answer all questions concerning his prebankruptcy communications with officers of the debtor corporation.

## I. FACTS

On December 6, 1984, Met-L-Wood Corporation filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. Defendant Frederick Pipin is the President of Met-L-Wood and the President of Pipin Industries Incorporated, which owns 100 percent of the stock of Met-L-Wood. Plaintiff Constantine John Gekas is the appointed Chapter 7 trustee of the estate of Met-L-Wood.

After conducting an investigation into the affairs of Met-L-Wood, Gekas filed this action against various individuals including Pipin, alleging violations of the Bankruptcy Code, Racketeer Influenced and Corrupt Organizations Act (RICO), and Illinois statutory and common law. As discovery progressed, a dispute arose concerning the deposition of Daniel Zazove, a lawyer initially retained by Pipin on October 29, 1984 to represent Met-L-Wood. At his deposition, Zazove testified that he concentrates his practice in the area of bankruptcy and discussed bankruptcy options with representatives of Met-L-Wood from the onset of his retention. When Zazove was asked by Gekas to disclose all prebankruptcy communications he had with Pipin and other representatives of Met-L-Wood, Pipin asserted Met-L-Wood's attorney-client privilege. Gekas responded by informing Pipin and Zazove that as trustee of Met-L-Wood, he held the debtor corporation's attorney-client privilege and ordered Zazove to answer. However, Zazove declined to disclose any such communications until the conflicting privilege claims were resolved.

Gekas subsequently filed an emergency motion to compel Zazove to disclose all pre- and postbankruptcy communications with Met-L-Wood representatives. After a brief hearing on the matter, this court ordered that the parties brief the issue of prebankruptcy communications and suggested that the Zazove deposition proceed on all undisputed matters. Although this court directed Gekas not to question Zazove about postbankruptcy communications with Met-L-Wood representatives until a decision on prebankruptcy communications had been reached, no determinative ruling regarding postbankruptcy communications was made.

## II. DISCUSSION

The sole issue before this court is who controls the debtor corporation's attorney-client privilege with respect to prebankruptcy communications between representatives of the debtor corporation and an attorney hired primarily for the purpose of offering bankruptcy counsel. Gekas, citing *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), asserts that he controls Met-L-Wood's attorney-client privilege. In *Weintraub*, the Supreme Court held that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications between the corporation's former manage-

ment and corporate counsel. *Weintraub,* 105 S.Ct. at 1995. Since Gekas has waived Met-L-Wood's privilege with respect to all prebankruptcy communications Zazove may have had with Met-L-Wood management, Gekas contends his motion to compel Zazove to answer must be granted.

Pipin, however, insists that *Weintraub* does not extend to the facts in this case. Pipin argues that since Zazove was retained primarily for the purpose of offering bankruptcy advice, an exception to the *Weintraub* rule must be recognized. Pipin's argument stems from the premise that the trustee is essentially the agent of and fiduciary for the debtor's unsecured creditors and that Met-L-Wood, as a separate entity, is entitled to separate legal representation in bankruptcy. If the trustee is given the power to discover all communications debtor management has with its bankruptcy counsel, Pipin asserts Met-L-Wood's right to independent representation would become meaningless. Pipin also contends that such a result would create an undesirable chilling effect on the full and frank communications necessary to complete and competent representation. Since Bankruptcy Rules require the debtor's counsel to conduct prepetition investigation to certify that the petition is well grounded in fact and not interposed for any improper purpose, Pipin suggests that shifting control of the privilege will impede the candid flow of information needed for the attorney to afford proper bankruptcy counseling. Because *Weintraub* did not involve prepetition communications between bankruptcy counsel and corporate management, Pipin contends that he retains Met-L-Wood's attorney-client privilege with respect to Zazove. As both parties' arguments revolve around the scope of the *Weintraub* holding, this court will first carefully review the Supreme Court's ruling and rationale before addressing the present dispute.

In *Weintraub,* the Commodity Futures Trading Commission (CFTC) sought to depose the debtor corporation's former attorney concerning alleged misappropriations of funds by former employees. *Id.* at 1990. At the deposition, the attorney refused to answer questions concerning his communications with employees of the debtor corporation asserting the attorney-client privilege. *Id.* The CFTC sought and received a waiver of the privilege for all prebankruptcy communications from the appointed trustee of the debtor corporation. *Id.* Former officers of the debtor corporation, however, intervened and attempted to assert the corporation's privilege.

Addressing the parties' assertions, the Court observed that when control of a corporation passes to new management, authority to assert or waive the privilege also passes to the incoming management. Reasoning that the actor whose duties most closely resemble those of the management of a solvent corporation should control the privilege of a corporation in bankruptcy, the Court analyzed the respective roles of the debtor management and bankruptcy trustee. *Id.* at 1992–93. Finding that the Bankruptcy Code's allocation of duties and rights so heavily favored the trustee that virtually no management powers remained with the debtor's directors, the Court determined that the trustee assumed the role most analogous to the management of a solvent corporation. As such, the Court stated the trustee should control the debtor corporation's attorney-client privilege unless such control would conflict with the policies of the bankruptcy laws. *Id.* at 1993.

First identifying the Bankruptcy Code's goal of uncovering insider fraud, the Court determined that allowing the debtor's directors to control the assertion of the attorney-client privilege would defeat attempts by the trustee to identify hidden or misappropriated assets of the estate. *Id.* at 1994. As such, the goal of uncovering fraud on the part of the debtor's management would be substantially impaired if control of the privilege remained with the debtor's directors. *Id.* The Court then addressed the argument that management should retain the privilege since the trustee could not adequately serve the interests of the debtor's shareholders given the trustee's primary loyalty to the debtor's credi-

tors. *Id.* Rejecting this contention, the Court stated that the trustee's fiduciary duties ran to both shareholders and creditors of the debtor. *Id.* The Court observed that bankruptcy causes several fundamental changes in the nature of corporate relationships which will often result in the interests of the shareholders being subordinated to those of the creditors. *Id.* Admitting that oftentimes the privilege would be exercised by the trustee in a manner most beneficial to the creditors, the Court did not find such a result anomalous since "it [was] in keeping with the hierarchy of interests created by the bankruptcy laws." *Id.*

Finally, the Court addressed the debtor directors' remaining arguments concerning an asserted chilling effect which would result if management lost control of the attorney-client privilege upon filing a petition in bankruptcy. The debtor directors argued that such a shift in control to the trustee would cause management to be wary of speaking freely to corporate attorneys for fear of subsequent disclosure. The debtor directors also argued such a shift in control would create a disincentive for debtors to file voluntary bankruptcy petitions. *Id.* at 1995–96. Dismissing the first argument, the court commented that in the case of a solvent company directors always run the risk that successor management might waive the privilege with respect to communications between counsel and prior management. *Id.* at 1995. Thus, the Court viewed any chilling effect caused by transferring control of the privilege to the trustee upon filing bankruptcy no greater than that faced by the management of a solvent corporation. *Id.* Turning to the remaining argument advanced by the directors, the Court pointed out that several incentives were created by the Bankruptcy Code for inducing and discouraging the filing of bankruptcy petitions. *Id.* The Court found that shifting control of the privilege away from the debtor directors did not create any incentives or disincentives inconsistent with the intent of the Bankruptcy Code. *Id.* Finding no conflict with the policies of the Bankruptcy

Code that required an opposite result, the Court held that the trustee in bankruptcy controlled the debtor corporation's attorney-client privilege with respect to pre-bankruptcy communications and ordered the CFTC's motion to compel be granted. *Id.*

Returning to the present case, Pipin essentially seeks to distinguish *Weintraub* on the ground that communications between debtor management and bankruptcy counsel were not involved. However, examining Pipin's arguments in light of the Court's rationale in *Weintraub* shows no compelling reason for the application of a different rule when bankruptcy counsel is involved. Pipin's first argument concerning the debtor corporation's right to independent counsel fails to persuade this court because a similar argument was addressed and rejected in *Weintraub*. Pipin premises his first argument on the ground that the trustee owes his primary duty of loyalty to the creditors of the debtor corporation and is incapable of protecting the interests of the shareholders. However, the Supreme Court clearly stated in *Weintraub* that the trustee is fiduciary of both the creditors and shareholders and is thus bound to exercise the privilege in a manner consistent with those duties. *Weintraub*, 105 S.Ct. at 1994. Where insider fraud and wrongdoing is suspected, the debtor corporation's privilege should be waived so hidden assets can be recovered for the benefit of both the creditors and shareholders. Such a waiver does not operate to diminish the shareholders' interests. Instead, where management is suspected of wrongdoing, placing the trustee in control of the privilege will result in more protection for shareholders than an opposite rule. Thus, it is not clear that the interests of the shareholders will be any less represented by giving the trustee the power to waive the privilege.

The second argument advanced by Pipin concerns the alleged chilling effect that would result between management and bankruptcy counsel were the *Weintraub* rule to apply to Zazove's communications with Met-L-Wood employees. However,

the Court in *Weintraub* expressly dismissed the argument that allowing the trustee to control the debtor corporation's privilege would result in an undue chilling of attorney-client communications. *Id.* at 1995. Had the Supreme Court directly addressed the privilege question in the context of bankruptcy representation, this court believes a similar result would have been reached. The overriding rationale of the Court in *Weintraub* was that when control of the corporation's management functions shifts to a new actor, so also should the power to waive or assert the corporation's privilege. Since the trustee assumes the role most analogous to the management of a solvent company, the trustee, like the incoming management of a solvent corporation, has the power to waive the privilege with regard to communications involving former management. Nowhere in *Weintraub* did the Court suggest that no chilling of communications between management and counsel would result by according the trustee with the corporation's privilege. Instead, the Court determined that the interests promoted by affording control of the privilege to the party assuming the corporation's management functions outweighed the interests served by allowing debtor management to retain the corporation's privilege. Similarly, a balancing of interests in the present case leads to the same result. Moreover, Pipin's proposed exception would allow any defalcating corporate officer to circumvent the *Weintraub* ruling merely by asserting the debtor's attorney was hired as bankruptcy counsel. Such a result would clearly conflict with the Bankruptcy Code's policy of uncovering insider fraud. Accordingly, this court is compelled to rule that *Weintraub* extends to prepetition communications involving debtor management and bankruptcy counsel. Since Gekas has waived Met-L-Wood's attorney-client privilege, Zazove must respond to questions concerning all prepetition communications he had with Met-L-Wood management.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to compel Daniel Zazove to answer all questions concerning his prebankruptcy communications with officers of the debtor corporation is granted.

IT IS SO ORDERED.